NORBERT J. KENNY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3102. Promulgated February 8, 1945.

*Moses H. Rothman, Esq.,* and *Isidore Moses, Esq.,* for the petitioner.

*Thomas R. Charshee, Esq.,* for the respondent.

## OPINION.

HARRON, *Judge*: Petitioner seeks to invoke the provisions of section 119 of the Revenue Act of 1943, amending section 107 of the Internal Revenue Code by adding a new provision, subsection (d), which defines "back pay" and prescribes how it shall be taxed.

Section 107 was added as a new section in the Internal Revenue Code by section 220 (a) of the Revenue Act of 1939, and was amended by section 139 (a) of the Revenue Act of 1942. With the further amend

ment made by section 119 of the Revenue Act of 1943, section 107 is a special provision with four subsections (a) to (d), inclusive. Petitioner does not attempt to invoke the benefits of subsection (a). Subsection (d) is the only provision within the scope of which petitioner desires the question to be considered. The pertinent part of the statute is set forth in the margin.[1] This statutory definition sets forth what shall constitute "back pay" for purposes of a special relief provision for taxing such income as set forth in subsection (1) of section 107 (d). But income which does not fall within the definition shall not constitute "back pay." The question is whether the payment received by petitioner in 1941 for services performed in 1938 to 1940, inclusive, is "back pay" as defined by the statute.

Obviously, the income in question is not "salaries" which would have been paid in the prior years except for the intervention of the events described in (i), (ii), and (iii), and petitioner does not contend otherwise. Our inquiry must be whether the "event" which prevented the payment of the income in question to petitioner in the earlier years was such event as is set forth in the statute. The event which prevented payment in the years services were performed was an agreement between National and petitioner, entered into because of a loan agreement between National and R. F. C. When R. F. C. made the loan to National it considered National solvent, but required National to reduce certain current expenses until such time as R. F. C. should approve the increase thereof. Petitioner agreed to receive $12,000 per year, $7,800 in cash payments, and a credit for the balance. Regarding the two agreements made in 1937 as a type of "event," it was not such "event" as is described in the statute in (i), (ii), and (iii).

---

[1] SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE.

\* \* \* \* \* \* \*

(d) BACK PAY.—

(1) IN GENERAL.—If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 per centum of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portion of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under regulations prescribed by the Commissioner with the approval of the Secretary.

(2) DEFINITION OF BACK PAY.—For the purposes of this subsection, "back pay" means (A) remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which would have been paid prior to the taxable year except for the intervention of one of the following events: (i) bankruptcy or receivership of the employer; (ii) dispute as to the liability of the employer to pay such remuneration, which is determined after the commencement of court proceedings; (iii) if the employer is the United States, a State, a Territory, or any political subdivision thereof; or the District of Columbia, or any agency or instrumentality of any of the foregoing, lack of funds appropriated to pay such remuneration; or (iv) any other event determined to be similar in nature and under regulations prescribed by the Commissioner with the approval of the Secretary \* \* \*. Amounts not includible in gross income under this chapter shall not constitute "back pay."

Petitioner places his entire reliance upon (iv), "any other event determined to be similar in nature under regulations prescribed by the Commissioner." The Commissioner has issued his regulation under T. D. 5389, dated July 10, 1944, and reported in Internal Revenue Bulletin No. 14, July 25, 1944, p. 8, which amends Regulations 111 by inserting a new section, section 29, 107–3. The regulation now prescribed by the Commissioner is as follows (p. 9) :

\* \* \* \* \* \* \*

An event will be considered similar in nature to those events specified in section 107(d)(2)(A)(i), (ii), and (iii) only if the circumstances are unusual, if they are of the type specified therein, if they operate to defer payment of the remuneration for the services performed, and if payment, except for such circumstances, would have been made prior to the taxable year in which received or accrued. For the purposes of this section the term "back pay" does not include remuneration which is deemed to be constructively received in the taxable year or years in which the services were performed, remuneration paid in the current year in accordance with the usual practice or custom of the employer even though received in respect of services performed in a prior year or years, additional compensation for past services where there was no prior agreement or legal obligation to pay such additional compensation, or any amount which is not includible in gross income under Chapter 1.

\* \* \* \* \* \* \*

The reports of the Congressional committees show that the committees were concerned with the problem of how far the scope of the definition of "back pay" should extend. The definition first proposed was too limited and was rejected by the Finance Committee of the Senate. Thereafter, in conference, the definition of "back pay" was broadened to the definition enacted, with the explanation in the report of the Committee of Conference that "The term [back pay] refers only to remuneration, the payment of which has been deferred by reason of the unusual circumstances of the type specified in the definition." See Senate Report No. 627, 78th Cong., 1st sess., Finance Committee, p. 22; and House Report No. 1079, 78th Cong., 2d sess., Committee of Conference, p. 44. (Reported, also, in Internal Revenue Bulletin, No. 6, p. 81, March 25, 1944, and No. 7, p. 37, April 11, 1944.) The regulation of the Commissioner quoted above does not specify particular "events" which will be accepted as similar to those set forth in (i), (ii), and (iii) of the definition, but makes the test any circumstance which is unusual and which is of the type specified therein, and provides, further, that there must be at least a prior agreement or legal obligation to pay additional compensation for past services.

Mindful of the rule that judicial and administrative interpretation must not invade the function of the legislature so as to extend the scope of a statute, the problem of applying the statutory definition of "back pay" must be regarded as a special problem in each case. The

regulation of the Commissioner provides a test which limits similar "events" to the "type" set forth in (i), (ii), and (iii), but it also sets forth a guide in the description of what shall not constitute "back pay." The remuneration in question is not excluded from "back pay" by that description of the negative.

Upon due consideration we think the situation which gave rise to the agreement made in December 1937 between National and petitioner constituted a similar event under the regulation which the Congress authorized the Commissioner to make. The situation was not usual, and National was restricted under its agreement with R. F. C. in making payments from earnings in ways which resemble the restrictions placed upon business operations conducted under receivership. The salary of petitioner was fixed at $12,000 per year by R. F. C., with the condition that payment of $4,200 of annual salary was to be deferred. National, under its agreement with petitioner, was obligated to pay him the deferred payments of salary at such time as the loan from R. F. C. was fully paid.

Petitioner agreed to accept two-thirds of the sums credited to his account for salary in the prior years. Of the total sum of $9,704.96 paid him in 1941, $8,400 represents salary earned in the prior years. That amount exceeds 15 percent of the gross income of petitioner in 1941. It is held that the sum of $8,400 represents back pay under (iv) of section 107 (d) (2), and the income tax on that amount is limited as is prescribed in subsection 1 of section 107 (d). It is pointed out that such income could not be held to have been constructively received in the earlier years when credits to petitioner's salary account were made.

Petitioner, at some time in 1940, made another agreement with National relating to sharing in 6 percent of profits computed as agreed upon. The sum of $1,304.96 which petitioner received in 1941 was not back pay under section 107 (d) (2) (iv). It is so held, and such amount is includible in gross income for 1941 and is taxable in the regular way without benefit of section 107 (d) (1). Section 107 (d) (2) limits the definition of back pay to wages, salaries, retirement pay, and similar "*compensation.*" Sharing in profits is not to be assumed to be compensation similar to salaries, and petitioner has not proved that it was. The holding made above is premised upon the conclusion that the restrictions on salary payments made by R. F. C. resemble the restrictions imposed by a receiver. The agreement made in 1940 with National was made without the consent of R. F. C.

Reviewed by the Court.

*Decision will be entered under Rule 50.*