JAMES NEWTON DEAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13301. Promulgated April 21, 1948.

*Albert W. Fox, Esq.*, for the petitioner.
*E. M. Woolf, Esq.*, for the respondent.

**OPINION.**

HARLAN, *Judge*: The respondent contends that the $13,045.32 received by petitioner in 1944, under the contract of April 1, 1942, was a share of the profits of ERCO, and did not constitute "back pay" under the provisions of subsection (2) of section 107 (d) of the Internal Revenue Code. Section 107 (d) is set forth in the margin.[1]

---

[1] SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY.

\*     \*     \*     \*     \*     \*     \*

(d) BACK PAY.—

(1) IN GENERAL.—If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 per centum of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under regulations prescribed by the Commissioner with the approval of the Secretary.

(2) DEFINITION OF BACK PAY.—For the purposes of this subsection, "back pay" means (A) remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services

The petitioner contends that the $13,045.32 payment was for services performed prior to the taxable year, that it was made retroactive with the approval of the Salary Stabilization Unit, and that it constituted "back pay" under the provisions of section 107 (d) (2) (B).

Both the respondent and the petitioner cite *Norbert J. Kenny*, 4 T. C. 750. In that case the taxpayer's employer in 1937 was required to defer payment of part of the salaries of certain officers, including the taxpayer, as a condition to receiving a loan from the Reconstruction Finance Corporation. The agreement between the employer and R. F. C. provided that $7,800 of the taxpayer's annual salary of $12,000 should be payable and that the remaining $4,200 should be withheld by the borrower and credited to the taxpayer on its books. The employer was obligated to pay the portion of the annual salary credited to the taxpayer when the R. F. C. loan was repaid. Credits were made in 1938, 1939, and 1940 for deferred salary earned in those years. In 1940, without the consent of R. F. C., the employer and the taxpayer entered into a verbal agreement that the taxpayer should be credited on its books with 6 per cent of the profits. In 1941 the taxpayer received $9,704.96 in full payment of the credits, $8,400 of this amount representing salary and $1,304.96 a share of the profits. This Court held that the $8,400 constituted "back pay" and that the tax on this amount was limited as prescribed in section 107 (d) (1) of the code. We also held that the sum of $1,304.96 did not constitute "back pay" and that this amount was taxable in the regular way without the benefit of section 107 (d) (1). In connection with the latter holding, we said:

* * * Section 107 (d) (2) limits the definition of back pay to wages, salaries, retirement pay, and similar *"compensation."* Sharing in profits is not to be assumed to be compensation similar to salaries, and petitioner has not proved that it was. The holding made above is premised upon the conclusion that the restrictions on salary payments made by R. F. C. resemble the restrictions imposed by a receiver. The agreement made in 1940 with National was made without the consent of R. F. C.

---

performed prior to the taxable year for his employer and which would have been paid prior to the taxable year except for the intervention of one of the following events : (i) bankruptcy or receivership of the employer ; (ii) dispute as to the liability of the employer to pay such remuneration, which is determined after the commencement of court proceedings ; (iii) if the employer is the United States, a State, a Territory, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any of the foregoing, lack of funds appropriated to pay such remuneration ; or (iv) any other event determined to be similar in nature and under regulations prescribed by the Commissioner with the approval of the Secretary ; and (B) wages or salaries which are received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which constitute retroactive wage or salary increases ordered, recommended, or approved by any Federal or State agency, and made retroactive to any period prior to the taxable year ; and (C) payments which are received or accrued during the taxable year as the result of an alleged violation by an employer of any State or Federal law relating to labor standards or practices, and which are determined under regulations prescribed by the Commissioner with the approval of the Secretary to be attributable to a prior taxable year. Amounts not includible in gross income under this chapter shall not constitute "back pay."

Respondent on brief states that the *Kenny* case brings out the distinction between payment of salary and payment of amounts as a share of profits. He then argues that the $13,045.32 received by petitioner in 1944 represented a share of ERCO's profits. A share of profits paid by a corporation to an employee can, however, be "back pay" within the meaning of that term as defined in section 107 (d) (2), and the *Kenny* case does not hold otherwise. In that case the evidence disclosed only that $1,304.96 of the amount the petitioner received in 1941 represented a share of the corporation's profits and that he received this share of profits as a result of a verbal arrangement in 1940 between him and the corporation, made without the consent of R. F. C., whereby, in addition to the salary withheld in that year, he was to be credited with 6 per cent of the corporation's profits. In order to bring this share of profits within the statutory definition of "back pay" we would have had to assume, without proof, that it was compensation similar to salaries paid for services rendered in the prior year. We refused to make this assumption. We have no such failure of proof in the instant proceeding.

Subdivision (B) of section 107 (d) (2), *supra*, provides that the term "back pay" embraces wages or salaries which are received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which constitutes retroactive wage or salary increases ordered, recommended, or approved by any Federal or State agency, and made retroactive to any period prior to the taxable year. Section 29.107–3 of Regulations 111 provides in part that the term "wage or salary increases" as used in this section includes payments not made until after the close of the taxable year on account of rulings under the Inflation Control Act of 1942, even though the total amount paid for services rendered does not exceed the amount payable by contract.

The payment of $13,045.32 by ERCO to petitioner in 1944 qualifies as "back pay" under these provisions of the code and the respondent's regulations. It represents compensation for services performed by petitioner during 1943. It was authorized by the board of directors of ERCO during that year, but was withheld because on December 13, 1943, the Salary Stabilization Unit of the Bureau of Internal Revenue, under the Inflation Control Act of 1942, ruled that this payment could not be made because it was in excess of additional compensation paid to petitioner in 1942. It was made after the close of the taxable year 1943 because of the ruling of the unit on April 1, 1944, which reversed its 1943 ruling and authorized the payment of this "additional compensation based on sales." The benefits of section 107 (d) (2) are not restricted to compensation received in the form of fixed salaries. The term "back pay" includes "all compensation received or accrued during

the taxable year by an employee for services performed prior to the taxable year for his employer" where "the payment is deferred by reason of the unusual circumstances of the type specified in the definition." See Conference Report, Revenue Act of 1943, H. R. No. 1079, 78th Cong., 2d sess., pp. 44–45. Even though the petitioner's compensation of $13,045.32 was measured by a percentage of sales of certain departments of ERCO, and was contingent upon the realization of profits by that corporation, it is nevertheless "back pay" within the meaning of that term as defined in section 107 (d) (2) (B). The income tax thereon is, therefore, limited as is prescribed in subsection (1) of section 107 (d).

However, if, for the sake of the argument, we were to hold with the Commissioner that compensation which consisted of a share of profits is not to be taxed as back pay as provided for in section 107 (d) (2) of the code, nevertheless we would be constrained to decide the ultimate point for the taxpayer herein, for the reason that the incentive pay, consisting of one-fourth of 1 per cent of the amount *received* by the turret department, the aircraft subcontracting department, and the antenna department of ERCO, has little or no resemblance to a "share of the profits" of ERCO.

The contract provided that unless ERCO earned enough profits to pay the incentive pay, such pay would not be paid. It is, of course, obvious that no matter how high the profits of ERCO might rise, the incentive pay is limited to a percentage of production and not to a percentage of profits. Also, since the incentive pay is based upon the amount received by the three specified departments and not upon the amount produced in those departments, the incentive pay might well be received in one year for work that had been performed in a prior year. The work could well be performed in a year of large profits to ERCO, but the incentive pay might never be paid to the employee because during the year these departments received compensation for their products ERCO might not have earned the necessary profits to pay the incentive pay. The only possible manner by which ERCO's profits could affect petitioner's incentive pay was by becoming nonexistent. We can not construe such a situation as creating a profit-sharing arrangement.

Reviewed by the Court.

*Decision will be entered for the petitioner.*