Joseph P. Deery and Margaret Deery v. Commissioner.
Deery v. Commissioner
Docket No. 44211.
United States Tax Court
T.C. Memo 1954-175; 1954 Tax Ct. Memo LEXIS 70; 13 T.C.M. (CCH) 969; T.C.M. (RIA) 54281; October 18, 1954, Filed Edward C. Crouch, Esq., 700 Union Commerce Building, Cleveland, Ohio, for the petitioners. R. G. deQuevedo, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies of $5,331.97 and $440.62 in petitioners' income taxes for the taxable years 1947 and 1948, respectively. The questions to be decided are (1) whether the sum received by petitioner Joseph P. Deery in settlement of a law suit in 1947 constituted back pay within the provisions of section 107(d), Internal Revenue Code of 1939; and (2) whether traveling expenses incurred by petitioner Joseph P. Deery on trips between Cleveland and Toledo, Ohio are deductible under section 23(a)(1)(A), Internal Revenue Code of 1939, as amended, during each of the years in controversy; if not, (3) whether *71 expenses incurred by him in and around Cleveland, Ohio during these years are deductible under that section. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners Joseph P. Deery and Margaret Deery are husband and wife. During the taxable years in controversy, they resided in Lakewood, Ohio and filed joint income tax returns with the collector for the eighteenth district of Ohio. Joseph Deery, hereinafter called petitioner, is a paint executive and has been engaged in the business of manufacturing and selling paint and paint products for most of his life. During the years 1941, 1942 and 1943, petitioner, operating as an independent contractor under the name "Protective Coatings," acted as a consultant for, and sold the products of, Impervious Varnish Company of Rochester, Pennsylvania, for which he was paid between $30,000 and $31,000 on a commission basis during the year 1943. W. W. Ehrhart and Jack P. Ehrhart, the owners of all of the capital stock (except for one or two shares) of Jamestown Paint and Varnish Company, Jamestown, Pennsylvania, hereinafter called Jamestown, for and on behalf of themselves as individuals and also *72 for and on behalf of Jamestown, entered into an oral agreement with petitioner in the early part of December 1943, as follows: Petitioner agreed to undertake and perform the duties of active management of Jamestown; and the Ehrharts agreed that they would pay petitioner the sum of $10,000 per year, and that in addition thereto they would make provision for the transfer of stock control of Jamestown to petitioner and to make provision for payment by petitioner for such effective control out of the profits of Jamestown; but that if these arrangements were not made effective, then petitioner would be paid additional compensation of $20,000 per year. As a result of this agreement, petitioner took over management of Jamestown on December 15, 1943, operating under the title of vice president and general manager. Many attempts were made by petitioner after the date of the aforesaid agreement to make arrangements for the transfer to himself of control of Jamestown. The Ehrharts refused to make provision for such transfer of control. Petitioner and the Ehrharts were never able to determine a valuation for the assets of Jamestown. Jamestown was sold by the Ehrharts to an auditor who had *73 been hired by petitioner to make a valuation of the company's assets, discharged by petitioner, and subsequently rehired by the Ehrharts over petitioner's protests. For his services as vice president and general manager of Jamestown, petitioner received compensation of $10,000 in 1944, $10,000 in 1945, and one month's salary for January 1946, of $833.33. Petitioner's total income from all sources during 1946 was $4,166.65. Petitioner carried on his managerial duties until February 6, 1946, when the relationship was terminated due to various misunderstandings which had occurred in the prior year. Inasmuch as the contract was terminated and the transfer of the stock had not been consummated, petitioner filed suit in the District Court of the United States, Western District of Pennsylvania, Northern Division, for the recovery of an additional $20,000 per year over and above $10,000 under the provisions of his oral agreement with the Ehrharts. This suit was filed jointly and severally against Jamestown, J. B. Ehrhart and W. W. Ehrhart for $70,000 which the complaint alleged represented $20,000 for each of the years, 1944, 1945 and 1946, and $10,000 salary for the year 1946. A verdict *74 in the amount of $55,833.35 was rendered by the jury in this suit against each of the three defendants therein. After the verdict was rendered petitioner settled the lawsuit for $51,000, which was paid to him in 1947. After deducting costs and expenses, the net proceeds of the suit to petitioner amounted to $33,521.19. In reporting the net proceeds of the lawsuit on petitioners' income tax return for 1947, petitioners filed schedules attributing the proceeds one-third to 1944, one-third to 1945 and one-third to 1946, and computed their tax for 1947 on that basis. Petitioner entered into an agreement with Oxford Corporation, hereinafter called Oxford, under date of August 15, 1946, whereunder petitioner agreed to operate a paint plant at Toledo, Ohio, owned by Oxford. Pursuant to this agreement, petitioner caused to be organized on August 19, 1946, under the laws of the State of Ohio, Zenith Enamel and Varnish Company, hereinafter called Zenith, which corporation assumed petitioner's rights and obligations under his agreement with Oxford. Petitioner was elected president and treasurer of Zenith at a salary of $10,000 per year. Petitioner's primary duties as president and treasurer *75 of Zenith were to supervise the operations of the Toledo plant and to build up the sales volume of the plant. Oxford had a going operation at the Toledo plant, but its sales volume was so low that it was losing money. It was intended that petitioner would develop sales for the business, and that in this connection he would maintain a sales headquarters in Cleveland, Ohio, which was the location of his home. Article 14 of Zenith's Code of Regulations, relating to the duties of president of the corporation, provides as follows.. "A. President. The President shall preside at all meetings of shareholders and directors. He shall exercise, subject to the control of the Board of Directors and the shareholders of the corporation, a general supervision over the affairs of the corporation, and shall perform generally all duties incident to the office and such other duties as may be assigned to him from time to time by the Board of Directors." During the calendar year 1947, petitioner spent 126 days at the Zenith plant in Toledo, Ohio, and the balance of the year, including weekends and holidays, was spent in Cleveland. Travel expenses incurred going to and from Toledo and living expenses *76 incurred while petitioner was in Toledo amounted to $1,340.89. This amount was reimbursed to petitioner by Zenith. During the calendar year 1948, petitioner spent 173 days at the Zenith plant and the balance of the year, including weekends and holidays, was spent in Cleveland. During this year travel expenses going between Cleveland and Toledo and living expenses incurred while in Toledo amounted to $2,119.60 for which petitioner was reimbursed by Zenith. Petitioner incurred deductible expenses in the amount of $1,250 during each of the years in controversy. Opinion Unlike most of the cases [1] construing the "back pay" subdivision of section 107, which determined whether the "event" [2] causing postponement of the payment was bankruptcy, litigation or the like, this proceeding requires consideration of whether petitioner as an "employee" received "remuneration" which was "for services performed * * * for his employer." That there was litigation here, and that the payment in dispute was made because of it admits of no debate, and is not, apparently, contested. Respondent has instead devised an elaborate theory that the agreement, under which petitioner ultimately succeeded *77 in recovering judgment, was made not with the corporation by which he was employed but with its controlling stockholders. *78 The difficulty arises because the agreement was oral, and, in some measure, tends to support or defeat the respective contentions according to the form of words employed to describe it. The Ehrharts, with whom petitioner negotiated, were, of course, individuals. But they were the controlling directors and responsible officers of the corporation by whom petitioner was to be employed. They must have acted in some degree as such. And there was only one contract. Whatever its terminology, the sense of the arrangement, as apparently accepted by the trial jury, was that petitioner was to receive as remuneration each year $10,000 and an additional $20,000 unless in the meantime satisfactory provisions were made for him to acquire a controlling interest. This never came to pass. The lawsuit followed, not to gain control but to recover the stipulated payments. While the contract may not have expressed clearly whose the liability was to pay the amounts specified, the payments were clearly in the nature of compensation for services, and the only services rendered were to the corporation. Section 107 may call for strict construction. But it seems to us the contract must be viewed realistically *79 and that its true intent, rather than some fanciful lack of legal purity, should govern its construction here, especially in the light of the jury's verdict. So regarded we think it called for the payments to be made to petitioner as an employee by his employer and as remuneration for the services rendered as such. Section 107(d) accordingly applies. Weldon D. Smith, 17 T.C. 135, revd. other issue (C.A. 2) 203 Fed. (2d) 310. The remaining question is whether petitioner can deduct as business expense, outlays either for travel between Toledo and Cleveland, or for expense in Cleveland, his home being in the latter city and the employer's principal office in the former. It is apparently conceded, on the one hand, by petitioner, that petitioner's "primary" duties were in Toledo. We have found, at his request, that his "primary duties as President and Treasurer of Zenith were to supervise the operations of the Toledo plant and to build up the sales volume of the plant." On the other hand, respondent apparently does not dispute that some part of petitioner's assignment called for his presence in Cleveland although, eliminating Sundays, holidays, and possibly *80 Saturdays, petitioner apparently worked more days in Toledo. But the Cleveland expenses, naturally, are not shown since that was petitioner's home. Under all the circumstances we have found that petitioner is entitled to deduct his traveling expense between Cleveland and Toledo. The amounts must be estimated, and, following Cohan v. Commissioner, (C.A. 2) 39 Fed. (2d) 540, we have found that for each year the maximum allowable is $1,250. Decision will be entered under Rule 50. Footnotes
1. E.g., Norbert J. Kenny, 4 T.C. 750; Estate of R. L. Langer, 13 T.C. 419, rev'd (C.A. 9) 183 Fed. (2d) 758; Frank R. Bavis, 18 T.C. 418, aff'd (C.A. 3) 202 Fed. (2d) 843↩. 2. SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY. * * *
(d) Back Pay. - (1) In General. - If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 per centum of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under regulations prescribed by the Commissioner with the approval of the Secretary. (2) Definition of Back Pay. - For the purposes of this subsection, "back pay" means (A) remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which would have been paid prior to the taxable year except for the intervention of one of the following events: * * * (ii) dispute as to the liability of the employer to pay such remuneration, which is determined after the commencement of court proceedings; * * *↩